UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Carl Jones, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 3-22-cv-50299 |
| | ) | Honorable Iain D. Johnston |
| K. E. Ehrke, et al., | ) | Honorable Margaret Schneider |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## PLAINTIFF CARL JONES' SECOND AMENDED COMPLAINT

Pursuant to the Court's order dated January 3, 2024 (ECF 61), Plaintiff Carl Jones, by and through his undersigned counsel, complains against Defendants Ehrke, Paul, Abonce, Goodwin, Reinbolz, Parsons, Klienmaier, David Byrd, the City of Dekalb Police Department, City of Dekalb and John Does 1 – 45 (collectively, "Defendants"), and states as follows:

### PRELIMINARY STATEMENT

1. This lawsuit arises from Defendants' unconstitutional use of excessive force and other federal and state civil rights violations. Defendants' conduct was perpetuated while acting under the color of state law and in direct violation of Plaintiff Carl Jones' ("Mr. Jones" or "Plaintiff") constitutional rights guaranteed by the Fourth Amendment to the United States Constitution and the laws of the state of Illinois. This lawsuit seeks damages based upon federal and state civil and constitutional rights violations committed by Defendants, their employees, and or agents.

## JURISDICTION AND VENUE

2. This case is brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Fourth Amendment to the United States Constitution and under the laws of the State of Illinois. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this Complaint occurred in Dekalb County, Illinois.

## THE PARTIES

4. Plaintiff Carl Jones is a resident of Dekalb County, Illinois at all relevant times alleged herein.

5. Defendant Officer Ehrke ("Ehrke") was, at all relevant times herein, an officer with the City of Dekalb Police Department.

6. Defendant Officer Paul ("Paul") was, at all relevant times, an officer with the City of Dekalb Police Department.

7. Defendant Officer Abonce ("Abonce") was, at all relevant times, an officer with the City of Dekalb Police Department.

8. Defendant Officer Goodwin ("Goodwin") was, at all relevant times, an officer with the City of Dekalb Police Department.

9. Defendant Officer Reinbolz ("Reinbolz") was, at all relevant times, an officer with the City of Dekalb Police Department.

10. Defendant Officer Parsons ("Parsons") was, at all relevant times, an officer with the City of Dekalb Police Department.

11. Defendant Officer Kleinmaier ("Kleinmaier") was, at all relevant times, an officer with the City of Dekalb Police Department.

12. Defendant David Byrd ("Byrd") was, at all relevant times herein, the Chief of Police for the City of Dekalb Police Department and is named in his official capacity.

13. Defendant City of Dekalb Police Department ("CDPD") was, at all times alleged herein, responsible for the training and supervision of its officers.

14. Defendant the City of Dekalb ("City") is a municipal corporation which operates pursuant to the laws and Constitution of the State of Illinois, and is a corporation capable of suing and being sued.

15. Defendant John Does 1 – 45 were, at all times relevant herein, employees, agents or otherwise of Defendant CDPD who, in turn and at all relevant times, had administrative responsibility for investigating complaints of misconduct and training all employees of the CDPD as well as supervising medical personal and training of officers and deputies of the CDPD. Any and all identifiable individuals, through discovery or otherwise, are sued in their individual and official capacities.

## ALLEGATIONS COMMON TO ALL COUNTS

16. On June 2, 2022, Jones was at or near an area close to Northern Illinois University when he was approached by certain Defendants.

17. Then and there, and after Mr. Jones was pinned forcefully to a cement floor, Defendant Kleinmaier deployed his taser on Plaintiff multiple times, who had been forcefully and excessively tackled to the ground by Defendant Parsons.

18. Plaintiff was tackled onto a concrete landing of a two-story building leading to injuries to Plaintiff's face, shoulder, knees and chest from the excessive force used by Defendants.

19. After being subdued and pinned forcefully to the ground, Plaintiff was handcuffed by Defendants, unaware of the fact that a cord from one of Defendant's earpiece was tangled with

Plaintiff's hand. During this time, Plaintiff made numerous pleas to reduce the pressure of the handcuffs as they were so tight as to cause severe pain to Plaintiff's wrists, which at one point, went numb from pain.

20. During this time, Defendants continued to apply excessive force to Plaintiff's back and legs with their full body weight, including additional deployment of Kleinmaier's taser to multiple areas of Plaintiff's body. At each deployment, Plaintiff screamed in pain without an ability to move and the additional shocks from the taser were unreasonable in light of the circumstances.

21. The intensity of the taser caused Plaintiff severe pain during the incident and that pain continues to this day.

22. All other Defendants failed to intervene or offer Mr. Jones any aid during the violation of his rights. Instead, John Does 1 – 45 simply watched on as Defendants inflicted severe pain and excessive force upon Mr. Jones.

23. Due to an earlier incident with another citizen in the area, Jones was exhausted and unable to move on his own and struggled to inform Defendants that he was unable to breathe.

24. After gaining consciousness, Jones noticed multiple other officers and deputies had arrived at the scene and that his personal belongings had been removed from his person.

25. Defendants did not provide any medical care or see to it that Mr. Jones was seen by a medical professional in light of the incident.

26. To this day, Mr. Jones continues to suffer nerve problems and, despite numerous requests to CDPD and jail staff, has been denied access to see a medical profession in connection with the lingering effects of the repeated and excessive use of the taser on Mr. Jones. Indeed, Plaintiff has been provided with certain medication to address the damage to his nerves, and,

because his pain has unfortunately not improved, Defendants, or someone acting on their behalf, increased the dosage of this medication for Mr. Jones' injury and pain. Mr. Jones also suffers from numbness in his left hand, muscle spasms and twitches throughout his body and, at times, numbness to the entire left side of his body.

27. Upon information and belief, Defendant Byrd, as Chief of Police for the CDPD, provides training and promulgates policies relative to responses to incidents and the arrest and custody of individuals and promulgated those policies and procedures to Defendants before June 2, 2022.

### COUNT I – Violation of Civil Rights (Section 1983)
**Fourth Amendment – Use of Excessive Force**
**Against Kleinmaier, Goodwin, Abonce, Paul, Parsons and Does 1 – 45**

28. Mr. Jones incorporates and realleges Paragraphs 1 – 27 for Paragraph 28 as if fully set forth herein.

29. As described above, Defendants used excessive force that was objectively unreasonable against Mr. Jones on June 2, 2022, without provocation and without legitimate penal justification, and all other named Defendants failed to stop the unprovoked and unjustified excessive use of force against Mr. Jones.

30. While applying this excessive use of force through multiple deployments of the taser to multiple areas of Plaintiff's body, Defendants acted without good faith under the color of state law violated the constitutional rights guaranteed to Mr. Jones by the Fourth Amendment of the United States Constitution.

31. The Fourth Amendment of the United States Constitution protects Mr. Jones, like any other citizen, from the use of excessive force.

32. Defendants' actions were performed under color of state law.

33. Defendants' actions were unnecessary, unreasonable, unlawful, and unjustified.

34. As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, nerve damage, mental anguish, embarrassment, humiliation, and physical pain and suffering.

**COUNT II – Violation of Civil Rights (Section 1983)**
**Fourth Amendment – Failure to Intervene**
**Against Ehrke, Paul, Abonce, Goodwin, Reinbolz, Parsons, Klienmaier, and Does 1 - 45**

35. Plaintiff incorporates and realleges the allegations set forth in Paragraphs 1 – 34 for Paragraph 35 as if fully set forth herein.

36. Defendants, individually and collectively, had a duty to intervene when other Defendants, including John Does 1 – 45, violated Mr. Jones' constitutional rights, which resulted in the infliction of excessive force upon Plaintiff.

37. Each Defendant observed and/or had reason to know that excessive force was being inflicted upon Plaintiff without legitimate goal or justification and had the opportunity and means to prevent the excessive use of force and/or violations of Plaintiff's constitutional rights.

38. An officer is liable under Section 1983 for failure to intervene to prevent other law enforcement officers from infringing upon a citizen's constitutional rights if the officer had reason to know "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement officer, *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Littrell v. Gulbrantson*, No. 15 CV 50011, 2018 WL 2933664, at *10 (N.D. Ill. June 12, 2018).

39. Defendants failed to intervene while Mr. Jones' constitutional rights were being violated and had the opportunity to intervene so as to prevent further harm to Mr. Jones.

40. As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, nerve issues, embarrassment, humiliation, and physical pain and suffering.

### COUNT III – Violation of Civil Rights (Section 1983)
### *Monell* Liability – Unconstitutional Policy, Custom, or Procedure
### Against the City, CDPD and Byrd

41. Plaintiff incorporates and realleges Paragraphs 1 – 40 for Paragraph 41 as if fully set forth herein.

42. CDPD is a law enforcement agency in the City of Dekalb, Dekalb County, Illinois.

43. Byrd is the Chief of Police and, with the City, serves as a "policymaker" of that law enforcement agency. At all times relevant, Defendants' policies were the driving force leading to the violation of Mr. Jones' constitutional rights. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010).

44. Municipal liability can attach under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

45. Byrd, as the Chief of Police of the CDPD, has a custom, pattern, practice and procedure of training, supervising and implementing policies as it relates to the arrest and detention of citizens.

46. Upon information and belief, the CDPD has a systemic pattern and practice of violating citizens' constitutional rights through the continued implementation of unconstitutional policies and procedures. The policies include the (i) use of force, (ii) application of handcuffs; (iii) deployment of a taser; (iv) duty to intervene; (v) duty to render aid or medical attention; and (vi) other conduct violations.

47. Plaintiff is informed, believes, and thereupon alleges that the policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of Defendants, by and through their decision-makers.

48. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiff.

49. Plaintiff specifically alleges that Defendants' policy, custom, practices, and procedures, as described herein, were within Defendants' control and with the feasibility of Defendants to alter, adjust, correct or modify so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

50. As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, nerve issues, embarrassment, humiliation, and physical pain and suffering.

51. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the CDPD, through its policymaker, Byrd, are liable for the harms and losses sustained by Plaintiff.

### COUNT IV– Violation of Civil Rights (Section 1983)
*City of Canton* **Liability – Failure to Train and Supervise**
**Against CDPD and Byrd**

52. Plaintiff incorporates and realleges Paragraphs 1 – 51 for Paragraph 52 as if fully set forth herein.

53. Defendants violated Plaintiff's constitutional rights, as alleged herein, by creating and maintaining unconstitutional practices relating to:

   a. A failure to adequately train and supervise employees, officers, managers, and supervisors within the CDPD as to the legal requirements and protections applicable to persons as set forth in the United States Constitution and laws of the State of Illinois.

   b. Defendants' actions complained of herein reflect a deliberate indifference to Plaintiff's rights and a failure to adequately train and supervise employees and officers relative to detaining individuals, arrest, use of force and application of restraints. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011)

54. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Plaintiff and, in circumstances present here, liability under Section 1983 may attach. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

55. If Defendants had been properly trained, Mr. Jones would not have suffered any injury or violation of his constitutional rights.

### COUNT V – Intentional Infliction of Emotional Distress
**Against All Defendants**

56. Plaintiff incorporates and realleges Paragraphs 1 – 55 for Paragraph 56 as if fully set forth herein.

57. As described above, Defendants' conduct was extreme and outrageous, including, without limitation, the use of excessive force against Mr. Jones without provocation or justification, forcing Mr. Jones to suffer harm.

58. Defendants either intended to inflict emotional distress upon Mr. Jones when engaging in this conduct, or knew that there was a high probability that such conduct would result in such distress and acted with deliberate indifference to that knowledge.

59. Defendants' conduct caused Mr. Jones to suffer severe emotional distress that no reasonable person could be expected to endure.

**COUNT VI – Failure to Render Medical Aid and Deliberate Indifference to Medical Needs Against All Defendants**

60. Plaintiff incorporates and realleges Paragraphs 1 – 59 for Paragraph 60 as if fully set forth herein.

61. As described herein, Defendants used excessive force against Mr. Jones on June 2, 2022, including multiple deployments of a taser on Mr. Jones who was unable to move or flee because other Defendants pinned him to the cement ground by their knees.

62. During the incident, Defendants failed to intervene and stop the unprovoked and unjustified excessive use of force against Mr. Jones.

63. As described herein, Defendants failed to ensure that Mr. Jones received prompt and adequate medical care subsequent to his interaction with Defendants on June 2, 2022.

64. Defendants' actions exhibited a deliberate indifference to Jones' medical needs, were performed under the color of state law and violated Mr. Jones' rights under the U.S. Constitution.

65. Since the incident, Plaintiff has made and continues to make numerous requests to CDPD jail staff to be seen by a medical professional as it relates to his nerve issues, but to no avail.

66. The nurse within the infirmary has prescribed Mr. Jones nerve medication to address Mr. Jones' complaints relating to nerve damage suffered as a result of Defendants' excessive force. Because Mr. Jones' issues persist, the nurse doubled Mr. Jones' dosage. It is unknown whether Mr. Jones will require this medication for the rest of his life because he has not been properly treated for his injuries while in the custody of the CDPD and jail staff.

67. As a direct and proximate cause of Defendants' actions, Mr. Jones continues to suffer extreme hardship, including nerve issues for which Defendants continue to deny Mr. Jones the ability to be seen and treated by an appropriate medical professional. As alleged herein, Defendants have only prescribed a certain nerve medication at an increased dosage level to Mr. Jones. No other medical aid was or has been provided to Mr. Jones relative to the damages he suffered as a result of Defendants' conduct on June 2, 2022.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Carl Jones, respectfully demands judgment against the Defendants as follows:

a) Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiff as a result of Defendants' misconduct;

b) A declaration that Defendants violated Plaintiff's constitutional rights in contravention of the protections of the Fourth Amendment to the United States Constitution through their unreasonable use of excessive force; failure to intervene; failure to train and supervise, and maintenance of unconstitutional policies and procedures;

c) For reasonable attorneys' fees and costs against all Defendants, including reasonable attorneys' fees in accordance with 42. U.S.C. §1988 and any other applicable provisions;

d) Enjoin Defendants from the continued implementation of unconstitutional policies and procedures;

e) Order the Defendants to adopt and implement policies and procedures, training and accountability systems and practices to remedy the constitutional and statutory violations described herein;

f) Order the Defendants to ensure that Mr. Jones is examined by a proper medical professional relating to the nerve issues Mr. Jones continues to suffer to this day;

g) For costs of suit; and

h) For such further relief the Court deems just and proper.

**Plaintiff also requests a trial by jury on all issues so triable.**

Dated: January 3, 2024.

Respectfully submitted,

**CARL JONES**

By: */s/ Joshua L. Harris*
One of His Attorneys

Justin L. Weisberg (ARDC No. 6210397)
Joshua L. Harris (ARDC No. 6331095)
Robbins DiMonte, Ltd.
180 N. LaSalle Street, Ste. 3300
Chicago, IL 60601
jweisberg@robbinsdimonte.com
jharris@robbinsdimonte.com
T: 312-782-9000

**<u>Certificate of Service</u>**

   The undersigned certifies that on January 3, 2024, I filed the foregoing Plaintiff's Second Amended Complaint using the District Court's CM/ECF System which will serve a copy of same on all counsel of record.

              */s/ Joshua L. Harris*
              Joshua L. Harris

              *Counsel for Plaintiff Carl Jones*